RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE ___7___,__𝟤𝟢__,__𝟢𝟩__
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHARLES RAY LOVE, SR. | CIVIL ACTION NO. 07-0085 |
| VS. | SECTION P |
| WARDEN CHARLES JOHNSON, JR. | JUDGE DRELL |
| | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. §2254) filed *in forma pauperis* by *pro se* petitioner Charles Ray Love, Sr. on January 11, 2007. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Winn Corrections Center, Winnfield, Louisiana where he is serving a 20-year sentence imposed following his 2002 convictions on various drug-related charges in the Ninth Judicial District Court, Rapides Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE.**

### *Statement of the Case*

On January 25, 2001 petitioner and others were indicted by

2

the Rapides Parish Grand Jury. The sixteen-count indictment
charged petitioner and his co-defendants with production or
manufacture of cocaine or cocaine base [R.S.40:967(B)(4)(a)];
conspiracy to produce or manufacture cocaine base [R.S.14:26,
40:967(B)(4)(a)]; possession with intent to distribute cocaine
[R.S.40:967(A)(1)]; conspiracy to possess with intent to
distribute cocaine [R.S.14:26, 40:979 and 967(A)(1)]; possession
with intent to distribute oxycodone [R.S.40:967(A)(1)];
conspiracy to possess with intent to distribute oxycodone
[R.S.14:26, 40:979 and 967(A)(1)]; possession with intent to
distribute dihydrocodeienone [R.S.40:967(A)(1); conspiracy to
possess with intent to distribute dihydrocodienone [R.S.14:26,
40:979 and 968(A)(1)]; possession with intent to distribute
alprazolam [R.S.40:969(A)(1)]; conspiracy to possess with intent
to distribute alprazolam [R.S.14:26, 40:979 and 969(A)(1)];
possession with intent to distribute codeine [R.S.40:968(A)(1)];
conspiracy to possess with intent to distribute codeine
[R.S.14:26, 40:979 and 968(A)(1)]; possession with intent to
distribute marijuana [R.S.40:966(A)(1)]; conspiracy to possess
with intent to distribute marijuana [R.S.14:26, 40:979 and
968(A)(1)]; money laundering [R.S.14:230(B)]; and conspiracy to
commit money laundering [R.S.14:26 and 230(B)]. [doc. 1-3, pp. 1-
4; doc. 8, Exhibit H]

    On some unspecified date prior to February 21, 2002,

3

petitioner's trial attorney filed multiple Motions to Quash. The "First Motion to Quash" alleged that it was unlawful to charge petitioner with conspiracy to possess with intent to distribute since the charge identified two inchoate offenses [doc. 1-3, p. 23]; the "Motion to Quash" alleged that the indictments were in violation of La. C.Cr.P. art. 532 because the indictment failed to charge an offense punishable under a valid statute and because the indictment resulted in a misjoinder of defendants and because trial for the offense would constitute double jeopardy [doc. 1-3, pp. 24-25]; the "Second Motion to Quash" also raised the claim that the charges of conspiracy to possess with intent to distribute amounted to prosecution for double inchoate offenses and that the statute under which these prosecutions arose was unconstitutional [doc. 1-3, pp. 25-26]; the "Third Motion to Quash" charged that the Grand Jury was unconstitutionally constituted in that the venire excluded convicted felons who had been pardoned [doc. 1-3, p. 28]; the "Fourth Motion to Quash" charged that the indictment was defective because it charged some offenses in the disjunctive making it impossible to prepare a defense [doc. 1-3, pp. 29-30]; and, the "Fifth Motion to Quash" alleged that the indictment did not comply with La. C.Cr.P. art. 465(A)(17) with respect to the charging of a conspiracy. [doc. 1-

4

3, p.31][1]

According to petitioner, the trial court "denied each motion without reasons." [doc. 1-4, p. 2] According to the court minutes submitted by petitioner, the trial judge considered several of the motions to quash on January 28, 2002 and denied them all. [doc. 8, Exhibit I, pp. 4-6] Thereafter, on February 1, 2002 the court denied the remaining motion to quash. [doc. 8, Exhibit I, p. 6]

On February 21, 2002 petitioner was found guilty as charged on Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 15 and 16.   He was found not guilty of Counts 12 and 14. [doc. 1-1, paragraph 2(a); doc. 8, Exhibit I, pp. 31-32]

On February 28, 2002 petitioner, through retained counsel, filed an "Ex Parte Motion and Order to Proceed In Forma Pauperis and Authorize Payment to Court Reporter."[doc. 5, Exhibit A,p. 7]

On May 20, 2002 he was sentenced to serve concurrent sentences totaling twenty-years at hard labor. [doc. 1-1, paragraphs 2(b) and 3; doc. 8, Exhibit I, pp. 34-36]

On August 26, 2002 a hearing was convened on petitioner's Motion to Determine Indigency. [doc. 5, Exhibit B, pp. 8-11] On or about June 12, 2003, petitioner's retained trial attorney filed an Application for Writ of Review, Certiorari, Prohibition

---

[1] None of the Motions to Quash complained about discrimination in the selection of the Grand Jury or the Grand Jury's foreman.

5

and Mandamus in the Third Circuit Court of Appeal. [doc. 5, Exhibit E, pp. 14-17] According to that motion, following the imposition of sentence, petitioner "... timely filed a motion and order for an appeal and received a [sic] estimated costs for the transcript of approximately $9,570.00..." Additionally, counsel alleged, "...defense counsel filed a motion and order to proceed in forma pauperis and authorize payment to the court reporter which was heard and after hearing taken under advisement. On April 29, 2003, the Honorable Thomas M. Yeager denied applicants [sic] request to proceed in forma pauperis ..." [doc. 5, Exhibit E,  p. 16]

On November 5, 2003, another one of petitioner's Motions to determine indigency was denied. [doc. 5, Exhibit C, p. 12]

On or about December 9, 2003 petitioner filed a *pro se* Notice of Intent to Seek Writs of Review of the court's order denying him indigency status. He was ordered to file his writ application in the Third Circuit within 60 days of December 10, 2003. [doc. 5, Exhibit D, p. 13]

On February 11, 2004 a pro se writ was filed in the Third Circuit Court of Appeals and assigned Docket Number CW 04-00168. On March 26, 2004 this writ application was denied with the finding, "We find no abuse of discretion in the trial court's ruling." *State of Louisiana v. Charles Ray Love, Sr.*, No. CW 04-00168 (La. App. 3 Cir. 3/26/2004). [doc. 5, Exhibit F, p. 18]

6

On June 28, 2005 and June 26, 2006 petitioner corresponded to the Louisiana Supreme Court seeking information on a writ application he claimed was filed in April 2004. On August 17, 2006, the Supreme Court advised petitioner, "It has been determined that your writ was received in this Court in April 2004, but was lost. The exhibits and letter received July 5, 2006, are being filed; you may supplement this filing within 90 days." [doc. 5, Exhibit G, p. 19]

On August 23, 2006 the Supreme Court advised petitioner that pleadings "... metered on 6/27/2006..." were "...received and filed on 8/23/2006..." These pleadings sought review of the Third Circuit's decision in CW 04-00168 and were assigned Louisiana Supreme Court Docket Number 2006-KH-2126. [doc. 5, Exhibit H, p. 20] According to the pleadings and the published jurisprudence, this writ remains pending before the Supreme Court.[2]

On September 27, 2005 petitioner filed a Petition for Writ of *Habeas Corpus* in the Ninth Judicial District Court. [doc. 1-4, p. 4; doc. 1-3, pp. 5-11; doc. 8, Exhibit A] The Petition alleged that the trial judge selected the foreperson of the Grand Jury which indicted him in violation of Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed. 2d 551 (1998). [*id.*]

---

[2] Petitioner has not provided a copy of the pleadings associated with the writ application; he alleges that the writ application seeks review of the trial court's refusal to permit him to proceed *in forma pauperis* on appeal and thus argues that since it remains pending before the Supreme Court, his judgment of conviction has not become final by the conclusion of direct review. [See Objection to Report and Recommendation, doc. 5, pp. 4-5]

7

On October 12, 2005 petitioner filed a "Motion to Show Cause" why his writ should not be granted. [doc. 1-4, p. 4; doc. 1-3, pp. 17-19; doc. 8, Exhibit A-2] Meanwhile, on October 4, 2005 the district court denied his petition for *habeas corpus* without providing reasons for judgment.[doc. 8, Exhibit A, pp. 6 and 8] On October 19, 2005 his "Motion to Show Cause" was also denied in the same manner. [doc. 1-4, p. 4; doc. 8, Exhibit A-2, p. 4]]

On November 21, 2005 petitioner filed a "Writ of Mandamus" in the Third Circuit Court of Appeals. The pleading was docketed under Docket Number KH-05-01440 and denied on January 3, 2006. See State of Louisiana v. Charles Ray Love, Sr., No. KH 05-01440 (La. App. 3 Cir. 1/3/2006)(unpublished). [doc. 1-4, p. 4; doc. 1-3, p. 20]

On January 17, 2006 petitioner filed a *pro se* Application for Supervisory Writs in the Third Circuit seeking review of the October 2005 judgments of the Ninth Judicial District Court. [doc. 1-4, p. 5; doc. 1-3, pp. 12-16] On February 9, 2006, the Third Circuit denied writs noting

> Relator is before this court seeking review of the trial court's denial of his 'Application for Writ of Habeas Corpus.' We find no error in the trial court's ruling. See La. Code Crim.P. art. 351 et seq. and Sinclair v. Kennedy, 96-1510 (La. App. 1 Cir. 9/19/1997), 701 So.2d 457, *writ denied*, 97-2495 (La. 1998), 717 So.2d 645. Additionally, the time for Relator to seek review of his claim via appeal and/or post-conviction has expired. La. Code Crim.P. art. 914 and 930.8. State of Louisiana v. Charles Ray Love, Sr.,

8

No. KH 06-00050 (La. App. 3 Cir. 2/9/2006)(unpublished) [doc. 1-3, p. 21]

On or about February 27, 2006 petitioner filed a *pro se* writ application in the Louisiana Supreme Court seeking "Review of the Third Circuit Court of Appeal February 9, 2005 denial of his Writ of Habeas Corpus in docket number 04-00168, and on docket no. 260,147 of the Ninth Judicial District Court ..." [doc. 8, Exhibit B, p. 1] Petitioner's writ application was "...metered on 2/27/2006...", "... received and filed on 5/19/2006..." and assigned Supreme Court Docket Number 2006-KH-1172. [doc. 8, Exhibit C]

On December 15, 2006, the Supreme Court denied relief without comment dismissing petitioner's writ applications seeking review of Third Circuit judgments in KH 05-01440 and KH 06-00050. State of Louisiana ex rel. Charles Ray Love, Sr. v. State of Louisiana, 2006-1172 (La. 12/15/2006), 944 So.2d 1279. [see also doc. 1-3, p. 22]

Petitioner signed his federal *habeas corpus* petition on January 8, 2007 [doc. 1-1, p. 14]; it was mailed on January 9 [doc. 1-1, p. 16] and received and filed on January 11, 2007. Petitioner raises a single claim for relief: "Petitioner argues he was the subject of an indictment by the grand jury that has been selected in a discriminatory manner by the trial court judge hand selecting the grand jury foreperson." [doc. 1-4, p. 5] He argues, "Petitioner is alleging that his indictment and his

9

conviction were unlawfully obtained by an unconstitutionally impaneled grand jury, where the procedure used to select the grand jury foreperson in the State of Louisiana was prohibited in Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed. 2d 551 (1998) where the trial judge hand selected the grand jury foreperson..." [doc. 1-4, p. 2]

On February 2, 2007, the undersigned recommended dismissal of the petition as time-barred by the provisions of 28 U.S.C. §2244(d).[3] [doc. 4] Petitioner timely objected and alleged facts contrary to his original assertions and which cast some doubt on the time-bar analysis. [doc. 5][4] Accordingly, on February 26,

---

[3] Based entirely upon the record submitted by the petitioner, and his assertion that he did not appeal his conviction and sentence, the undersigned made the following observations, "Petitioner did not appeal his conviction and sentence. For AEDPA purposes, petitioner's judgment of conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review' [28 U.S.C. §2244(d)(1)(A)], thirty days following February 21, 2002 (the date that petitioner was sentenced) or, on or about March 23, 2002. Under 28 U.S.C. § 2244(d)(1) he had one year, or until about March 23, 2003 to file his federal habeas petition.

Petitioner cannot rely on the statutory tolling provision of §2244(d)(2) because he did not file his first collateral attack in the state courts until September 27, 2005 [doc. 1-4, p. 4; doc. 1-3, p. 11]] and by that time, the limitations period had already long expired. Neither that filing, nor any of his subsequent filings in the Ninth Judicial District Court, the Third Circuit Court of Appeals or the Louisiana Supreme Court could operate to toll the limitations period since these proceedings were filed after the limitations period had already expired, and, as stated above, the lapse of time before the proper filing of the application for post-conviction relief must be counted against the one-year limitation period. Villegas, 184 F.3d 467, citing Flanagan v. Johnson, 154 F.3d 196, 197 (5th Cir.1998)." [doc. 4]

[4] As shown above, petitioner maintains that his writ application seeking review of the trial court's refusal to grant in forma pauperis status on appeal is still pending before the Louisiana Supreme Court, and therefore, he maintains that his judgment of conviction is not final since direct review has not yet concluded. [doc. 5, pp. 4-5] The undersigned is of the opinion that this contention is of doubtful validity. As has been shown, the Third Circuit Court of Appeals denied a previous writ application and in so doing noted, "...the time for Relator to seek review of his claim via appeal and/or post-

10

2007, the Court rejected the original Report and Recommendation. [doc. 6]

On April 20, 2007 the undersigned directed petitioner to amend his complaint. Among other things, the undersigned reminded petitioner that the merits of his grand jury claim were not addressed by the Third Circuit Court of Appeals because, according to the court, that claim was procedurally defaulted. Accordingly, petitioner was directed to address the procedural default and demonstrate that the court "... erroneously interposed a procedural bar." In the alternative, he was directed to demonstrate cause and prejudice for the default or, that a miscarriage of justice would result in the event that his claims were barred from federal habeas corpus review by the procedural default doctrine. [doc. 7, pp. 12-13]

Further, it was observed that petitioner's claim that the District Court appointed the foreperson of the Grand Jury was unsupported by any evidence. He was therefore directed to provide some evidence in support of this otherwise conclusory allegation. [*id.*] Finally, petitioner was directed to establish how the grand jury selection process resulted in some prejudice to him. [*id.*]

conviction has expired. La. Code Crim.P. art. 914 and 930.8." State of Louisiana v. Charles Ray Love, Sr., No. KH 06-00050 (La. App. 3 Cir. 2/9/2006)(unpublished) [doc. 1-3, p. 21] The Louisiana Supreme Court then denied petitioner's subsequent writ application seeking review of that judgment. State of Louisiana ex rel. Charles Ray Love, Sr. v. State of Louisiana, 2006-1172 (La. 12/15/2006), 944 So.2d 1279. [see also doc. 1-3, p. 22] Thus, it appears that the Louisiana courts also disagree with petitioner's theory concerning finality of judgment and the conclusion of direct review.

11

On May 18, 2007 petitioner amended his complaint and provided some, but not all of the documents requested. Petitioner argued that the Third Circuit erred when it determined that his habeas corpus petition was time-barred since "... there's no time prescriptive limitation period ..." for state habeas corpus relief. [doc. 8-1, p. 3]

### Law and Analysis

### 1. Procedural Default

As shown above, petitioner first raised his grand jury claim in a petition for writ of *habeas corpus* filed pursuant to La. C.Cr.P. art. 351 et seq. He alleged that he was "... in custody being held by virtue of a court order [and] the original custody was lawful but by some act omission or event which has since occurred, the custody has become unlawful." He further alleged that the order for custody was "deficient in some legal requisite and ... although legal in form imposes an illegal custody... [because] the procedure used by the trial court for selecting grand jury forepersons was held unconstitutional..." [doc. 8, Exhibit A] His motion to show cause specifically relied upon the provisions of La. C.Cr.P. art. 354. [doc. 8, Exhibit A2] The District Court denied his petition and motion without comment. [doc. 8, Exhibit A, A2]

However, on February 9, 2006, the Third Circuit denied his application for writs and in so doing provided the following

12

reasons for judgment:

> Relator is before this court seeking review of the
> trial court's denial of his 'Application for Writ of
> Habeas Corpus.' We find no error in the trial court's
> ruling. See La. Code Crim.P. art. 351 et seq. and
> Sinclair v. Kennedy, 96-1510 (La. App. 1 Cir.
> 9/19/1997), 701 So.2d 457, *writ denied*, 97-2495 (La.
> 1998), 717 So.2d 645. Additionally, the time for
> Relator to seek review of his claim via appeal and/or
> post-conviction has expired. La. Code Crim.P. art. 914
> and 930.8. State of Louisiana v. Charles Ray Love, Sr.,
> No. KH 06-00050 (La. App. 3 Cir. 2/9/2006)(unpublished)
> [doc. 1-3, p. 21]

The Third Circuit, and possibly the district court both

declined to reach the merits of petitioner's claim because those

courts determined that his grand jury claim was not properly

before the court as a petition for writ of *habeas corpus*. In

support of this finding, the Third Circuit cited Sinclair v.

Kennedy, 96-1510 (La. App. 1 Cir. 9/19/1997), 701 So.2d 457, *writ*

*denied*, 97-2495 (La. 1998), 717 So.2d 645 which held,

> Louisiana courts have constitutional authority to issue
> writs of habeas corpus. LSA-Const., art. I, § 21 and
> art. V, § 2. See State v. Terry, 458 So.2d 97, 100
> (La.1984). Habeas corpus is a writ commanding a person
> who has another in his custody to produce him before
> the court and to state the authority for the custody.
> LSA-C.Cr.P. art. 351. Generally, habeas corpus deals
> with pre-conviction complaints concerning custody, and
> is not the proper procedural device for post-conviction
> relief. LSA-C.Cr.P. art. 351 and Official Revision
> Comment (c). It is not available to contest the
> validity of the conviction or to have the sentence set
> aside; such claims are considered requests for
> post-conviction relief. See State ex rel. Lay v. Cain,
> 96-1247 (La.App. 1st Cir. 2/14/97), 691 So.2d 135, 137;
> State ex rel. James v. State, 640 So.2d 259 (La.App.
> 1st Cir.1993). Sinclair v. Kennedy, 701 So.2d at 460.

The procedural default doctrine applies to bar federal

13

*habeas corpus* review when a state court declines to address a prisoner's federal claims because the prisoner failed to follow a state procedural rule. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).) The last reasoned state court decision on this claim was issued by the Louisiana Third Circuit Court of Appeal. That court expressly relied on state procedural rules - La. C.Cr.P. art. 351 *et seq*. as interpreted by Sinclair v. Kennedy, *supra* - when it refused to reach the merits of petitioner's grand jury claims since, under Louisiana law, *habeas corpus* is not available to contest the validity of a criminal conviction or to have the sentence imposed following conviction set aside.

Federal courts typically refuse to reach the merits of questions of federal law if the state courts have expressly relied on an "adequate and independent" state procedural ground in refusing to review the claim.

"An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." Glover v. Cain, 128 F.3d 900, 902 (5th Cir.1997), *cert. denied*, 523 U.S. 1125 (1998), citing Amos v. Scott, 61 F .3d 333, 339 (5th Cir. 1995). A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*., citing Lott v. Hargett, 80 F.3d 161,

14

165 (5th Cir.1996). Petitioner herein makes no showing that the
default cited by the Third Circuit is not evenhandedly applied
thus the state court procedural rule at issue is presumed
adequate.[5]

A procedural rule is "independent" when the last state court
rendering a judgment in the case "clearly and expressly"
indicates that its judgment rests on the procedural ground. Amos,
61 F.3d at 338.

The procedural rules identified in this case satisfies both
requirements. In Louisiana, pleadings filed pursuant to La.
C.Cr.P. art. 351 *et seq.*, are deemed an inappropriate method of

---

[5] Indeed, other Louisiana courts have reached the same conclusion with
respect to the procedural default in question. See State of Louisiana ex rel.
Terry L. James v. State of Louisiana, 640 So.2d 259 (La. App. 1 Cir. 1993);
State of Louisiana v. Archie Thompson, 481 So.2d 1060 (La. App. 1 Cir. 1985);
State of Louisiana v. Obney, 1995-00439 (La. App. 3 Cir. 7/6/1995), 663 So.2d
69.

It should be noted, however, that in Obney,supra, the appeals court noted,
"However, arbitrary requirements of form and pleading should not be allowed to
obstruct access to judicial review. See State v. Higginbotham, 470 So.2d 648
(La.App. 1 Cir.1985); State ex rel Johnson v. Maggio, 440 So.2d 1336
(La.1983). Therefore, the trial court erred in failing to consider relator's
petition as an application for post- conviction relief. As relator's
conviction is final, relator can apply for post-conviction relief. See La.Code
Crim.P. art. 924." 663 So.2d. at 70. That option was clearly unavailable to
both the district court and the court of appeals because petitioner's ill-
fated pleadings made it abundantly clear that he wanted his claims reviewed
pursuant to the *habeas corpus* provisions of the Code of Criminal Procedure.
[See doc. 8, Exhibit A and A2 ("Now into court comes ... petitioner ... who
moves for defendants herein to show cause why his application for issuing an
habeas corpus shouldn't be granted within the time limitation of La. C.Cr.P.
art. 354."]

Further, as noted by the Third Circuit, even if his pleadings had been
construed as post-conviction claims, they were subject to dismissal as time-
barred by the provisions of La. C.Cr.P. art. 930.8, a finding that petitioner
did not dispute in his application for writs in the Louisiana Supreme Court.
[*id.*, Exhibit B]

15

launching collateral attacks on convictions. Further, since the last reasoned judgment on petitioner's claims, that of the Third Circuit Court of Appeals, specifically referred to the procedural default when it declined review of the merits of petitioner's claims, the undersigned finds that the identified procedural rule is also "independent."[6]

### 3. *Cause and Prejudice or Miscarriage of Justice*

Because petitioner's grand jury claim was procedurally defaulted, this court may refuse to review the merits of the claim unless petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing cause and prejudice for the default or that a miscarriage of justice will result from the denial of federal *habeas* review. See Finley v. Johnson, 243 F.3d 215, 220-221 (5th Cir. 2001); Coleman, *supra*; McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); Moore v. Roberts, 83 F.3d 699 (5th Cir.1996); Gray v. Netherland, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); Sones v. Hargett, 61 F.3d 410, 416 (5th Cir. 1995); Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639,

---

[6] The Louisiana Supreme Court did not articulate reasons for its denial of writs. However, where there has been a reasoned state court judgment which explicitly rejects the federal claim on state procedural grounds, subsequent unexplained judgments upholding the previous judgment or rejecting the claim are presumed to rely upon the same ground. In other words, when the last reasoned decision on the claim explicitly relied upon a state procedural default, federal courts must presume that later decisions rejecting the claim "did not silently disregard that bar and consider the merits." Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

16

2649; Glover, 128 F.3d at 904; Ward v. Cain, 53 F.3d 106, 108

(5th Cir.1995); Callins v. Johnson, 89 F.3d 210, 213 (5th

Cir.1996) quoting McClesky, 499 U.S. at 495, 114 S.Ct. at 1471.

### *Cause and prejudice*

In Murray v. Carrier, the Supreme Court explained that

"cause" requires an impediment external to the defense: "[W]e

think that the existence of cause for a procedural default must

ordinarily turn on whether the prisoner can show that some

objective factor external to the defense impeded counsel's

efforts to comply with the State's procedural rule. Without

attempting an exhaustive catalog of such objective impediments to

compliance with a procedural rule, we note that a showing that

the factual or legal basis for a claim was not reasonably

available to counsel, or that some interference by officials made

compliance impracticable, would constitute cause under this

standard. *Id*. at 488, 106 S.Ct. at 2645 (internal citations

omitted)."

Petitioner declined the invitation to establish cause for

his default. [see docs. 7 and 8-1[7]] Clearly, the cause of the

default at issue was petitioner's failure to properly file his

collateral attack. He can point to no objective factor external

---

[7] As shown above, in the Memorandum Order of April 20, 2007, the
undersigned specifically directed petitioner to provide "...evidence and
argument to establish 'cause and prejudice' for the default..." [doc. 7, p.
13] Petitioner's response provided no argument with respect to cause. [doc. 8-
1]

17

to the defense which would account for his failure to employ the appropriate procedure to launch his collateral attack.

If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. <u>Saahir v. Collins</u>, 956 F.2d 115, 118 (5th Cir.1992).  Nevertheless, in this case, even if it is assumed that petitioner has shown cause for his default, he cannot show prejudice since he is unable to show that even a properly filed collateral attack would have resulted in a judgment in his favor.[8]  As is shown below, petitioner's claim is patently without merit.

Further, it should be noted that petitioner did not file a timely motion to quash based on the grounds asserted herein.[9]  It

---

[8] Petitioner presented a convoluted argument on the issue of "actual prejudice." He argued that the judge who presided over his trial had previously been the prosecutor who prosecuted one of his co-defendants. The evidence supplied by petitioner indicates that Judge Thomas Yeager, the District Court Judge who presided over petitioner's trial, was an Assistant District Attorney in 1994, and, on January 25, 1994, then Assistant District Attorney Yeager dismissed a charge of theft over $500 which had been filed against one Darrin Wayne Love. [doc. 8, Exhibit D, p. 4] Likewise, on June 4, 1996, then Assistant District Attorney Yeager made a motion to continue in a case involving Kelvin Love. [doc. 8, Exhibit D, p. 5] He also argued that during his tenure as Judge, Judge Yeager presided over the civil forfeiture action involving property seized under Louisiana's drug forfeiture statutes. [La. R.S.40:2600 et seq.] He claimed that Judge Yeager denied a number of motions filed on petitioner's behalf during and the trial and that this same judge who refused to grant petitioner *in forma pauperis* status on appeal. He argued that the exhibits establish that the judge was not impartial. He also argued that one of the jurors lied during *voir dire* about prior arrests. Finally, he argued that the indictment was invalid because it was not signed by the Grand Jury foreman and that the selection process used to select the foreperson was improper. [doc. 8-1] Petitioner does not otherwise explain how these allegations, even if true, establish prejudice resulting from the procedural default of his grand jury claim.

[9] As previously shown, petitioner's trial counsel filed a barrage of pre-trial motions to quash. However, none of these motions attacked the process used to select the Grand Jury foreperson. The "First Motion to Quash" alleged that it was unlawful to charge petitioner with conspiracy to possess

18

seems highly probable that this fact would have been raised at some point in the post-conviction proceedings to bar further review of petitioner's grand jury claim. All equal protection claims arising out of the selection or composition of grand juries in Louisiana remain subject to this state's procedural requirements. Francis v. Henderson, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). Defendants must assert their equal protection or due process claims in a pre-trial motion to quash or waive any complaint in that regard. Francis, 425 U.S. at 539-542, 96 S.Ct. at 1710-11; State v. Lee, 340 So.2d 180, 182 (La.1976) (motion to quash is the appropriate vehicle for challenging the validity of a grand jury indictment, composition, or selection process); State v. Dillard, 320 So.2d 116, 120 (La.1975) (failure to file a motion to quash before trial waives any challenge to the grand jury); State v. White, 193 La. 775, 192 So. 345, 348 (1939) (same); Deloach v. Whitley, 96-1901, pp.

---

with intent to distribute since the charge identified two inchoate offenses [doc. 1-3, p. 23]; the "Motion to Quash" alleged that the indictments were in violation of La. C.Cr.P. art. 532 because the indictment failed to charge an offense punishable under a valid statute and because the indictment resulted in a misjoinder of defendants and because trial for the offense would constitute double jeopardy [doc. 1-3, pp. 24-25]; the "Second Motion to Quash" also raised the claim that the charges of conspiracy to possess with intent to distribute amounted to prosecution for double inchoate offenses and that the statute under which these prosecutions arose was unconstitutional [doc. 1-3, pp. 25-26]; the "Third Motion to Quash" charged that the Grand Jury was unconstitutionally constituted in that the venire excluded convicted felons who had been pardoned [doc. 1-3, p. 28]; the "Fourth Motion to Quash" charged that the indictment was defective because it charged some offenses in the disjunctive making it impossible to prepare a defense [doc. 1-3, pp. 29-30]; and, the "Fifth Motion to Quash" alleged that the indictment did not comply with La. C.Cr.P. art. 465(A)(17) with respect to the charging of a conspiracy. [doc. 1-3, p.31]

19

1-2 (La.11/22/96), 684 So.2d 349.

In short, petitioner cannot show prejudice resulting from the failure to consider the merits of his procedurally defaulted grand jury selection claim.

### Miscarriage of Justice

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); Glover, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. Corwin v. Johnson, 150 F.3d 467, 473 (5 Cir.1998); Ward v. Cain, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." Callins v. Johnson, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting McClesky v. Zant, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a factual matter that he is actually innocent of the various crimes responsible for his incarceration, and thus he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims. Accordingly, petitioner cannot avoid

20

procedural default on grounds of actual innocence.

## 4. *Merits of the Claims*

Petitioner argues a single claim for relief – that he was the subject of an indictment by the grand jury that has been selected in a discriminatory manner by the trial court judge hand selecting the grand jury foreperson." [doc. 1-4, p. 5] He argues, "Petitioner is alleging that his indictment and his conviction were unlawfully obtained by an unconstitutionally impaneled grand jury, where the procedure used to select the grand jury foreperson in the State of Louisiana was prohibited in <u>Campbell v. Louisiana</u>, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed. 2d 551 (1998) where the trial judge hand selected the grand jury foreperson..." [doc. 1-4, p. 2]

Petitioner is entitled to *habeas corpus* relief only on the grounds that "... he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

The United States Constitution states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." U.S. Const. Amend. V. However, the Fifth Amendment's requirement that felony offenses be prosecuted by indictment does not apply to state felony charges. In other words, the indictment provisions of the Fifth Amendment have not been incorporated

21

against the states through the Fourteenth Amendment. Branzburg v. Hayes, 408 U.S. 665, 688 n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (citing Hurtado v. California, 110 U.S. 516, 534-35, 4 S.Ct. 111, 28 L.Ed. 232 (1884)); Martin v. Beto, 397 F.2d 741 (5th Cir. 1968); Henderson v. Cronvich, 402 F.2d 763 (5th Cir. 1968); Brown v. Wainwright, 576 F.2d 1148 (5th Cir. 1978).

Under Louisiana law, only prosecution of offenses punishable by death or life imprisonment must be instituted by grand jury indictment. La. Const., 1974, Art. 1, §15; La. C.Cr.P. art. 382(A). Petitioner was charged with various drug-related offenses and money laundering; none of which were punishable by death or life imprisonment. See La. R.S.40:967(B)(4)(a); R.S.40:979; R.S.40:967(A)(1); R.S.40:968(A)(1); R.S.40:969(A)(1); R.S.40:966(A)(1); R.S.14:230(B) and R.S.14:26. Since none of the offenses charged were punishable by death or life imprisonment, petitioner's prosecution could have been instituted by Bill of Information. La. C.Cr.P. art. 382(A). The District Attorney was under no legal obligation to obtain an indictment charging petitioner with the above described felony offenses.

Under Louisiana law "An indictment is a written accusation of crime made by a grand jury. It must be ... indorsed 'a true bill' and the indorsement must be signed by the foreman." La. C.Cr.P. art. 383. As correctly noted by petitioner, the charging instrument in his case was not so indorsed. [doc. 8-1, pp. 8-9]

22

An information, on the other hand, "... is a written accusation of crime made by the district attorney ... and signed by him." La. C.Cr.P. art. 384. A Bill of Information "... must be filed in open court in a court having jurisdiction to try the offense..." La. C.Cr.P. art. 384.  The charging instrument complained of herein, while labeled an indictment, was, nevertheless, signed by the Assistant District Attorney and filed in the Ninth Judicial District Court. See doc. 8, Exhibit H. The document in question thus qualified as a Bill of Information and was sufficient to institute prosecution against the defendant under Louisiana and federal law.

Finally, petitioner has provided no support for his conclusory assertion that the foreperson of the Grand Jury which indicted him was selected in an impermissible manner. He has not even identified the race of the foreperson and therefore, it is impossible to conclude, on the basis of the pleadings, whether or not the selection process violated equal protection.

In short, petitioner has not shown that his prosecution, conviction, and custody were in violation of the Constitution and laws of the United States and therefore, he is not entitled to *habeas corpus* relief.

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**  because federal

23

habeas corpus review of petitioner's claim is barred by the procedural default doctrine and because his claim is clearly and manifestly without merit.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See,* Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED, in Chambers at Alexandria, Louisiana, this 19th day of _____, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE